UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC., | Case No. 2:09-cv-00270-MJP |
| Plaintiff, | |
| v. | MICROSOFT'S SECOND AMENDED COMPLAINT IN INTERVENTION AGAINST PLAINTIFF ANCORA TECHNOLOGIES, INC. AND THIRD PARTY COMPLAINT AGAINST MIKI MULLOR |
| TOSHIBA AMERICA INFORMATION SYSTEMS, INC., DELL, INC., HEWLETT-PACKARD COMPANY, | |
| Defendants, | **Jury Trial Demanded** |
| and | |
| MICROSOFT CORPORATION, | |
| Intervenor and Third Party Plaintiff, | |
| v. | |
| MIKI MULLOR, | |
| Third Party Defendant. | |

For its Second Amended Complaint in Intervention against Plaintiff Ancora

Technologies, Inc. ("Ancora" or "Plaintiff") and Third Party Defendant Miki Mullor

("Mullor"), Intervenor and Third Party Plaintiff Microsoft Corporation ("Microsoft") states as

follows:

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

# I. PARTIES

1. Microsoft is a corporation organized and existing under the laws of the State of Washington.

2. On information and belief, Ancora claims to be a corporation organized under the laws of the State of Delaware, with a place of business at 14014 Moorpark, #215, Sherman Oaks, California 91423.

3. Mullor is an individual believed to be a resident of King County, Washington. Upon information and belief, Mullor is the founder, sole shareholder, Chief Executive Officer, and a director of Ancora. Mullor also is a former employee of Microsoft. Upon information and belief, Mullor caused Ancora, his wholly-owned company, to initiate this lawsuit while Mullor was employed by Microsoft.

# II. PROCEDURAL BACKGROUND

4. On June 6, 2008, Ancora initiated a patent infringement action (the "Patent Action") in the United States District Court for the Central District of California, accusing Microsoft technology of infringing Ancora's patent, U.S. Patent No. 6,411,941 (the "'941 Patent"), issued on June 25, 2002 and titled "Method Of Restricting Software Operation Within A License Limitation."

5. In the Patent Action, Ancora accuses Microsoft of developing and implementing technology that infringes the '941 Patent. However, Ancora did not initially name Microsoft as a defendant. Instead, Ancora alleged that three Microsoft original equipment manufacturer ("OEM") customers – Toshiba America Information Systems, Inc.,[1] Dell, Inc., and Hewlett-Packard Company ("OEM Defendants" or "OEM Customers") – were infringing, based on their use of Microsoft's allegedly infringing technology.

---

[1] Defendant Toshiba America Information Systems, Inc. sells computers manufactured by others, but does not itself manufacture or control the manufacture of those computers.

MICROSOFT'S SECOND AMENDED
COMPLAINT IN INTERVENTION - 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

6. Ancora's original Complaint states that the OEM Defendants "have restricted software operation through the use of the SLP [System Locked Preinstallation] process which infringes the '941 patent." Microsoft has developed two versions of the "SLP" technology, which is now known as "OEM Activation." Version 1.0 of the technology is made available to qualifying OEM customers for use in connection with the pre-installation of Windows XP operating systems. Version 2.0 of the technology is made available to qualifying OEM customers for use in connection with the pre-installation of Windows Vista operating systems.

7. Following receipt of the Ancora Complaint, the OEM Defendants looked to Microsoft to defend and indemnify them against Ancora's claims.

8. On September 8, 2008, Microsoft moved to intervene in the Patent Action as a party-defendant. The motion was granted on September 22 and Microsoft filed its Complaint in Intervention on October 3.

9. On January 22, 2009, Microsoft filed a separate, but closely related, lawsuit against Mullor and Ancora in King County Superior Court (the "State Action"), asserting state law claims arising from Mullor's having taken advantage of his employment at Microsoft to improperly gain access to confidential information that would be of use to Ancora in the Patent Action. Microsoft alleged breaches of Mullor's employment contract, misappropriation of Microsoft's trade secrets, fraud, and unjust enrichment and sought declaratory judgment. Microsoft filed its lawsuit in King County as required by the exclusive Washington venue provision in Mullor's employment contract:

> this Agreement shall be governed for all purposes by the laws of the State of Washington as such laws apply to contracts performed within Washington by its residents and … exclusive venue and exclusive personal jurisdiction for any action arising out of this Agreement shall lie in state or federal court located in King County, Washington.

Microsoft Employee Agreement (Exhibit A), ¶ 15.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

10.	After filing the State Action, on January 29, Microsoft moved to transfer the Patent Action to the Western District of Washington for purposes of consolidating the two pending actions. The motion was granted on February 27, and the Patent Action was transferred to this Court.

11.	On April 29, the parties executed and filed a Stipulation to Facilitate Consolidation of Actions in which the parties agreed that Ancora could file an Amended Complaint in this Court adding Microsoft as a named defendant in the Patent Action, and that Microsoft could file an Amended Complaint in Intervention, adding Mullor as a third party defendant and asserting all claims against both Mullor and Ancora that had been alleged in the State Action. Upon consolidation of the two pending actions in this manner, Microsoft agreed to dismiss the State Action.

12.	By Order dated May 12, the Court approved and adopted the parties' Stipulation to Facilitate Consolidation of Actions. As authorized by the Order, Microsoft filed its First Amended Complaint in Intervention, on May 13, and Ancora filed its Amended Complaint on May 15. By Order dated May 27, the Court granted Microsoft's subsequent motion for leave to file this Second Amended Complaint in Intervention.

### III. JURISDICTION AND VENUE

13.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it concerns a federal question relating to patents arising under Title 25 of the United States Code. This Court has subject matter jurisdiction over the claims asserted herein based on 28 U.S.C. § 1331 because they concern federal questions arising under 28 U.S.C. §§ 2201 and 2202, as a result of Microsoft's claims for declaratory judgment of patent invalidity and non-infringement, and arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has subject matter jurisdiction over Microsoft's state law claims against Ancora and Mullor pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy.

MICROSOFT'S SECOND AMENDED
COMPLAINT IN INTERVENTION - 4

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

14. This Court has personal jurisdiction over Ancora and venue is proper in this forum based on Ancora's continued pursuit of its affirmative claims following transfer of this action from the United States District Court for the Central District of California.

15. This Court has personal jurisdiction over Mullor and venue is proper in this forum under the terms of Mullor's employment contract with Microsoft (Exhibit A, ¶ 15), which serves as the basis for one or more of Microsoft's claims.

16. Additionally, this Court has personal jurisdiction over Ancora and Mullor and venue is proper in this forum based on Ancora's and Mullor's consent to jurisdiction and venue as reflected in the parties' Stipulation to Facilitate Consolidation of Actions.

## IV. FACTS

### A. MULLOR SEEKS EMPLOYMENT AT MICROSOFT AFTER FORMING ANCORA, SECURING ITS RIGHTS TO THE '941 PATENT, AND PLANNING THE PATENT ACTION.

17. Upon information and belief, in 2004, Mullor was a shareholder and director of Beeble, Inc., which claimed to own the '941 Patent at that time.

18. In a September 2004 email (filed in separate litigation involving a Beeble, Inc. board contest), Mullor expressed his view that Microsoft had been infringing the '941 Patent since at least 2002. The email also states that Mullor had "secured an arrangement to enforce the patent via contingency litigation" and reflects that he had convinced himself as of that time that a lawsuit against Microsoft represented "potential damages ... estimated at $250-300M[.]" *See* Exhibit B.

19. Upon information and belief, Mullor incorporated Ancora in October 2004. In December 2004, he executed an assignment of the '941 Patent from Beeble to Ancora, his newly formed, and wholly-owned, company.

20. After taking steps to secure ownership and control of the '941 Patent from Beeble, on October 25, 2005, Mullor applied for employment at Microsoft.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

21.     In his employment application, Mullor acknowledged that he previously had been an employee of Ancora but stated that his "End Date" was October 2005 and that his "Reason for Leaving" was that the "Company went out of business." Exhibit C. He concealed the fact that the company still existed and that he was a director and its sole shareholder. Mullor concealed the fact that, if he joined Microsoft, his interests immediately would conflict with those of his new employer. Mullor did not disclose his view that Ancora had a claim against Microsoft for allegedly infringing Ancora's patent.

22.     On November 10, 2005, Microsoft offered Mullor a position as Program Manager in the Windows Security Group.

**B.      MULLOR'S EMPLOYMENT CONTRACT.**

23.     On November 24, 2005, Mullor signed and submitted the Microsoft Corporation Employee Agreement attached hereto as Exhibit A (the "Employee Agreement").

24.     The Employee Agreement sets forth the conditions of Mullor's employment, including his obligations not to compete with Microsoft; not to disclose to others, or to make any unauthorized use of, Microsoft's confidential, proprietary, or trade secret information; not to act in a manner inconsistent with Microsoft's interests; and not to provide services to any party engaging in activities competitive with Microsoft.

25.     In ¶ 1 of the Employee Agreement, Mullor agreed that:

> During my employment, I will not engage in any activity or investment that (a) conflicts with MICROSOFT's business interests, (b) occupies my attention so as to interfere with the proper and efficient performance of my duties for MICROSOFT, or (c) interferes with the independent exercise of my judgment in MICROSOFT's best interests.

26.     Mullor also agreed to a non-disclosure provision, ¶ 3, which provides in part:

> During my employment and at all times thereafter, I will neither disclose to anyone outside MICROSOFT nor use for any purpose other than my work for MICROSOFT (a) any confidential or proprietary information or trade secrets of MICROSOFT or it subsidiaries or (b) any information received by

MICROSOFT'S SECOND AMENDED
COMPLAINT IN INTERVENTION - 6

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

MICROSOFT or its subsidiaries from others that the recipient is obligated to treat as confidential or proprietary. . . . For purposes of this paragraph . . . "confidential or proprietary information or trade secrets" means all data and information in whatever form, tangible or intangible, that is not generally known to the public and that relates to the business, technology, practices, products, marketing, sales, services, finances, or legal affairs of MICROSOFT or its subsidiaries or any third party doing business with or providing information to MICROSOFT or its subsidiaries, including without limitation ... business, sales, marketing, technical, financial and legal plans, proposals and projections; and concepts, techniques, processes, methods, systems, designs, programs, code, formulas, research, technologies, features of technologies, experimental work and work in progress . . . *I also agree to cooperate with MICROSOFT in its efforts to ascertain and assure my compliance with this paragraph . . . even after my employment with MICROSOFT ends.* [Italics added.]

27.     In ¶ 10, Mullor agreed not to engage in any activities that were competitive with Microsoft during his employment and for a period of one year after his employment:

While employed at MICROSOFT and for a period of one year thereafter, I will not (a) engage in any competitive activities or accept employment by or agree to provide services to any person or entity that engages in competitive activities ("competitive activities" meaning the development, production or provision of any product, service, technology, product feature or project that is or is intended to be competitive with one or more products, services, technologies, product features or projects, including actual or demonstrably anticipated research or development, on which I worked or about which I learned confidential or proprietary information or trade secrets while employed at MICROSOFT[.]

28.     Paragraph 6 of the Employee Agreement provides Microsoft with a perpetual, royalty-free license to any invention in which Mullor had "an interest" either prior to or during his time at Microsoft and which Mullor permitted Microsoft to use or incorporate into its technology:

I have attached a list describing all Inventions that I am currently developing and all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions. As to any Invention in which I have an Interest at any time prior to or during my employment, if I use or incorporate such an Invention in any released or unreleased MICROSOFT product, service, program, process, machine, development or work in progress, or if I *permit MICROSOFT to use or incorporate such an Invention*, MICROSOFT is hereby granted and shall have an irrevocable, perpetual, royalty-free,

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

worldwide license to exercise any and all rights with respect to such Invention, including without limitation the right to protect, make, have made, use and sell that Invention without restriction and the right to sublicense those rights to others. [Italics added.]

29.     The very first line of the Employee Agreement states "If you wish to attach a list of inventions, per paragraph 6, below, please contact your recruiter." However, Mullor did not "contact his recruiter" or otherwise attempt to list the '941 Patent before executing and submitting the Employee Agreement to Microsoft on November 24. By the express terms of paragraph 6, his failure to do so constitutes a representation to Microsoft that "there are no such Inventions."

30.     Instead, Mullor waited until *after* he started work at Microsoft, thereby securing his electronic access to Microsoft's confidential internal documents. Two months *after* submitting the Employee Agreement, in an email dated January 26, Mullor for the first time contacted his recruiter about his purported inventions:

the agreement asks to list all prior inventions and prior work that was completed before joining MS, but doesn't provide a way to actually do that. Who should I talk to about completing that part of the agreement?

31.     Mullor did not disclose to Microsoft, either at that time or at any other time prior to Ancora's filing of this lawsuit, his belief that Microsoft's technology allegedly infringed the '941 Patent; that he controlled Ancora; or that he and Ancora had for some time been contemplating patent litigation against Microsoft.

32.     Mullor first referenced the '941 Patent in an email to his recruiter nearly two months after executing and submitting his Employee Agreement. The information was submitted only after Mullor's first full week at Microsoft. (*See* Exhibit D). Mullor did not disclose, either at that time or at any other time prior to Ancora's filing of this lawsuit, his belief that Microsoft's technology allegedly infringed the '941 Patent.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

33.     Under ¶ 13 of the Employee Agreement, Mullor agreed that any violation of the Employee Agreement would cause Microsoft irreparable harm, entitling Microsoft to appropriate equitable relief:

> I acknowledge that any violation of paragraphs 1, 3, 4, 5, 6, 7, 9, or 10 of this Agreement by me will cause irreparable injury to MICROSOFT and shall entitle MICROSOFT to equitable relief by a court, including without limitation temporary restraining orders and preliminary and permanent injunctions, which may extend any previously agreed period of restraint.

34.     The Employee Agreement (¶ 14) also entitles Microsoft to recover its attorneys' fees in any successful litigation against Mullor to enforce or interpret the terms of the agreement.

## C.     MULLOR DOWNLOADS CONFIDENTIAL MICROSOFT DOCUMENTS USEFUL FOR ANCORA'S LAWSUIT.

35.     Once employed at Microsoft, Mullor had largely unfettered access to confidential materials useful to Ancora's planned Patent Action. During his employment at Microsoft – including in the days and months preceding the filing of the Patent Action in June 2008 – Mullor accessed and downloaded to his company-issued laptop computer confidential Microsoft documents relating to the SLP/ OEM Activation technology, as well as documents relating to Microsoft's yet to be released Windows 7 operating system. The majority of the downloaded documents that Microsoft has been able to identify to date consist of communications (or drafts thereof) between Microsoft and its OEMs regarding pre-activation of the Windows Vista and Windows Server 2008 operating systems on the OEMs' computers. Other documents discuss Microsoft's confidential plans for release of the Windows Vista operating system to its OEMs and internal analyses regarding anti-piracy options, including at the OEM level.

36.     The documents known to have been downloaded by Mullor relate directly to the subject matter of Ancora's Patent Action. Upon information and belief, these documents had

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

no bearing on Mullor's work at Microsoft at the time and were not received or downloaded by him in the normal course of his Microsoft work.

37.     Mullor's act of accessing and downloading Microsoft's confidential, proprietary, and trade secret information, had the effect of instantly disclosing this information to Ancora, without authorization.

**D.     MULLOR TAKES STEPS TO CONCEAL HIS UNAUTHORIZED ACCESS TO MICROSOFT'S CONFIDENTIAL INFORMATION.**

38.     On June 2, 2008, just four days before Ancora filed its lawsuit against Microsoft's OEM Customers, Mullor installed on his Microsoft laptop computer, and ran, a file wiping program called "No File Recovery." Running such a program is consistent with an attempt to hide any evidence of what had previously been downloaded onto the computer.

39.     On June 5, 2008, the day before Ancora filed its lawsuit, Mullor again accessed and saved to his hard drive a number of additional confidential documents relating to Ancora's patent infringement claims.

**E.     MULLOR CAUSES ANCORA TO INITIATE THE PATENT ACTION AGAINST MICROSOFT'S OEM CUSTOMERS**

40.     On June 6, 2008, Ancora filed its Complaint against Microsoft's OEM Customers.

41.     Upon information and belief, Mullor, as Ancora's sole shareholder, authorized and approved filing the Complaint.

42.     Ancora claimed that Microsoft's OEM Customers have infringed the '941 Patent by having "made, used, offered for sale, imported and sold in the United States, and continu[ing] to make, use, offer for sale, import and sell in the United States products and/or processes which infringe the '941 patent, induce others to infringe and/or contributorily infringe the '941 patent." [original Complaint. at ¶ 11] In particular, Ancora has alleged that each of the OEM Manufacturers "restrict[s] software operation through use of the SLP process

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

which infringes the '941 patent, induces others to infringe, and/or contributorily infringes the '941 patent." [*Id.*]

43.    System-Locked Preinstallation ("SLP") is Microsoft technology. The Microsoft OEM Customers may use SLP when assembling and/or configuring their computer products for sale to end users. SLP is designed to help protect against the unauthorized copying and use of certain versions of Microsoft operating system software. Plaintiff's accusations of infringement against the Microsoft OEM Customers therefore implicate Microsoft software and technology.

44.    Upon information and belief, Ancora initially took the position that any Microsoft customer using SLP in the assembly or configuration of computer products for sale to end users infringes one or more claims of the '941 patent.

45.    In its Amended Complaint, Ancora is focusing only on version 2.0 of Microsoft's SLP or OEM Activation technology used in connection with assembly/configuration of computer products using a Windows® Vista operating system. Ancora appears to be seeking to distance itself from its original claim of infringement based on version 1.0 of the SLP or OEM Activation technology used in connection with Windows XP operating systems. Version 1.0 of the technology pre-dated Mullor's employment at Microsoft. In contrast, version 2.0 of the technology was being developed during Mullor's employment and had not yet been deployed in connection with any product offering of an OEM Defendant at the time Mullor joined Microsoft.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700    FAX. (206) 623-8717

**F. WHEN CONFRONTED BY MICROSOFT, MULLOR TAKES ADDITIONAL STEPS TO CONCEAL HIS UNAUTHORIZED ACCESS TO MICROSOFT'S CONFIDENTIAL INFORMATION.**

46.     After Ancora filed its lawsuit and the OEM Customers tendered the claims to Microsoft, Microsoft's in-house counsel contacted Mullor on August 14, 2008, to arrange a meeting for August 18.

47.     That same day, on August 14, *after receiving the meeting request*, Mullor installed and ran two more file wiping programs on his company-issued laptop, "Sure Delete" and "Eraser."

48.     After the August 18 meeting, at which Mullor repeatedly stated that he was not actively involved with Ancora, on August 19, a Microsoft in-house paralegal sent Mullor the following message:

> We need to retrieve your Microsoft owned laptop, hard drive and company owned mobile devices. Understanding this will be an inconvenience, we will endeavor to return them within several hours of retrieval. While we are at your office we will need to look for any hard copy documents you may have that are relevant to this litigation. [Emphasis added.]

49.     Then, at approximately 9:30 a.m. on August 20, two Microsoft representatives met Mullor at his office and requested that he hand over his company-issued laptop. Mullor declined, claiming that it would be more convenient for him to relinquish the laptop later in the day because he would not need it the next morning, when he planned to be out of the office. Then, at approximately 12:50 p.m. that same afternoon, Mullor ran a "defrag" utility, designed to overwrite deleted files, thus making file recovery more difficult.

50.     Mullor's efforts to remove the evidence showing that he had improperly accessed and downloaded Microsoft confidential materials were breaches of (among others) ¶ 3 of the Employee Agreement, including the last sentence thereof (*see* paragraph 26, *supra*).

51.     Later in the afternoon of August 20, Mullor delivered the laptop, with the altered hard drive, to Microsoft. Microsoft made an image of the hard drive. Microsoft

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON** LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

returned the laptop to Mullor the next morning. Mullor promptly re-installed Vista on his laptop, overwriting the originally installed operating system, an action that, like the previous file wipes and defragging activities, increases the difficulty of (and to some extent renders impossible) detection of Mullor's prior downloads of Microsoft confidential information.

52.     Microsoft still had the image it had taken of Mullor's hard drive on August 20, which was taken following some, but not all, of Mullor's efforts to erase the content of the hard drive. On reviewing that image, Microsoft was able to determine that Mullor had repeatedly attempted to wipe files from his hard drive using a variety of programs and techniques. Microsoft was thus able to identify some of the efforts Mullor took on or before August 20 to remove evidence from his hard drive, when he undertook those actions, and the technologies he used; however, Microsoft was not able immediately to determine the full scope of Mullor's activities. Eventually, a new forensic tool became available that enabled Microsoft to recover evidence showing some of the confidential documents that Mullor had misappropriated. Even with this tool, it is likely that Mullor accessed and/or downloaded other confidential, proprietary and trade secret documents that Microsoft has thus far been unable to identify.

53.     On September 8, 2008, Microsoft terminated Mullor's employment.

## G.     MULLOR LIES ABOUT HIS ACTIONS UNDER OATH.

54.     On January 8, 2009, counsel for Microsoft deposed Mullor in the Patent Action (then pending in California, and prior to Microsoft's filing of the State Action), posing a number of questions regarding his having gained unauthorized access to, having disclosed and/or used Microsoft's confidential information that was helpful to Ancora in the Patent Action. Mullor was also asked about any efforts to conceal or erase evidence of his unauthorized access from his laptop, and was specifically asked about installing and running file wiping programs and utilities on his company-issued laptop computer.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

55.     Apparently believing that his efforts to cover his tracks had been successful, Mullor intentionally made false statements about the actions he had taken to remove evidence of his improper access to Microsoft confidential information.

## V. COUNT I:  CLAIM FOR BREACH OF CONTRACT AND COMMON LAW DUTY OF LOYALTY (against Mullor)

56.     Microsoft restates, realleges, and incorporates by reference each of the foregoing paragraphs.

57.     Mullor breached his Employee Agreement and common law duty of loyalty by causing Ancora to sue Microsoft's OEM Customers for patent infringement based on their implementation of technology developed by Microsoft.

58.     Mullor knew that Ancora's claims would implicate Microsoft's SLP/OEM Activation technology and knew, or should have known, that Microsoft's OEMs would seek defense of and indemnification against Ancora's claims by Microsoft since those claims were predicated upon their use of Microsoft technology.

59.     Mullor breached his Employee Agreement and common law duty of loyalty by accessing Microsoft's confidential information relating to its SLP/OEM Activation technology without authorization and downloading such information for Ancora's use in the Patent Action, and by seeking to remove all evidence of these activities from his company-issued laptop computer.

60.     Mullor breached his Employee Agreement and common law duty of loyalty by failing to disclose his ongoing relationship with Ancora, his view that Microsoft had developed technology that infringed the '941 Patent, and his plan to cause Ancora to sue Microsoft's OEM Customers for patent infringement on a basis that would implicate Microsoft's own technology and directly conflict with Microsoft's business interests.  Had Mullor honored his Employee Agreement and his common law duty of loyalty, he would have made these

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

disclosures upfront so as to provide Microsoft the opportunity to review Mullor's infringement allegations and consider an appropriate course of action to minimize potential exposure. Further, had Mullor honored his Employee Agreement and his common law duty of loyalty, he would have made these disclosures while Microsoft was still developing version 2.0 of the technology that Ancora planned to accuse (and before Microsoft provided that technology to its OEMs), giving Microsoft the opportunity to consider whether to design around any potential infringement claim. Mullor deliberately withheld this information with the intent of magnifying the damages Ancora could claim in an infringement action while simultaneously abusing his position at Microsoft to misappropriate confidential information useful to Ancora in the litigation.

61.     In withholding this information while he was aware of Microsoft's use and development of technologies that Mullor believed fell within the claims of the '941 Patent, and assuming *arguendo* that the Microsoft technologies otherwise would infringe the '941 Patent, Mullor implicitly permitted Microsoft to incorporate the patented invention into Microsoft's technologies.

62.     To the extent that the SLP/OEM Activation technologies infringe the '941 Patent (which Microsoft denies), Microsoft is entitled to an irrevocable, perpetual and royalty-free license to the invention pursuant to Paragraph 6 of the Employee Agreement. Despite Mullor's contractual and common law duties to disclose to Microsoft – as early as 2005 and thereafter – both his and Ancora's view that these technologies infringed the '941 Patent, Mullor failed to do so, thereby breaching his duties to Microsoft for the purpose of encouraging Microsoft to continue down a development path of which Mullor was aware and which he intended to exploit for his personal financial gain.

63.     Microsoft has been damaged by Mullor's breaches of his Employee Agreement and common law duty of loyalty.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    64.    Microsoft is entitled to injunctive relief that includes, at a minimum, the

2    following:

3         a.    Ordering Mullor to have no further role in this lawsuit other than as a

4    Third-Party Defendant, including any role as a witness for Ancora or as a manager of the

5    litigation, as the only practical means of mitigating future damage from Mullor's illicit

6    knowledge of Microsoft's confidential information;

7         b.    Ordering Mullor to take all steps necessary to make immediate full

8    disclosure to Microsoft of all Microsoft confidential information that is, or previously was, in

9    the possession of Mullor, Ancora or counsel to Ancora as a result of Mullor's misappropriation

10   of such information while a Microsoft employee;

11        c.    Ordering Mullor to take all steps necessary to secure the immediate

12   return of any such confidential information (including all copies whether in electronic or hard

13   copy form and all derivative works based on or incorporating such information) still in the

14   possession of Mullor, Ancora or Ancora's counsel;

15        d.    Ordering Mullor not to provide Ancora or its counsel with any

16   confidential information that he obtained without authorization from Microsoft and not to

17   assist Ancora in its prosecution of its claims of patent infringement against Microsoft or its

18   OEMs;

19        e.    Ordering Mullor to execute, on behalf of his wholly-owned company,

20   Ancora, a formal license agreement providing Microsoft with "an irrevocable, perpetual,

21   royalty-free, worldwide license to exercise any and all rights with respect to [the '941 Patent],

22   including without limitation the right to sublicense those rights to others," including its OEMs;

23   and

24

25

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

f.      Ordering Mullor to refrain from directly or indirectly using, in any manner whatsoever, any Microsoft confidential information that is, or previously was, in the possession of Mullor.

65.     Additional injunctive relief may be in order depending upon the results of compliance with the orders requested above.

## VI. COUNT II: CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS
### (against Mullor and Ancora)

66.     Microsoft restates, realleges, and incorporates by reference each of the foregoing paragraphs.

67.     Mullor accessed, used, and disclosed Microsoft's trade secret information without authorization, in violation of Washington's Uniform Trade Secrets Act, RCW ch. 19.108 *et seq.* ("WUTSA").

68.     By reason of Mullor's total control of Ancora, Mullor's knowledge is Ancora's knowledge. Ancora acquired access to, and is improperly using in this lawsuit, Microsoft's trade secret information with full knowledge of Mullor's improper access and disclosure thereof, in violation of WUTSA.

69.     Microsoft has been damaged by Mullor's and Ancora's misappropriation of its trade secrets.

70.     Microsoft is entitled to an order enjoining Ancora from making any use of any Microsoft trade secret information improperly disclosed by Mullor, including for purposes of its prosecution of the Patent Action. Microsoft is further entitled to the injunctive relief outlined above in paragraph 64.

## VII. COUNT III: CLAIM FOR FRAUD
### (against Mullor)

71.     Microsoft restates, realleges, and incorporates by reference each of the foregoing paragraphs.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

72.     Mullor had duties of disclosure both at the time of his application for employment and after he became a Microsoft employee.  These duties included the duty to disclose to Microsoft his ongoing relationship with Ancora, his view that Microsoft was infringing Ancora's '941 Patent, and Ancora's plans to sue Microsoft and/or its OEMs for patent infringement when he sought employment with Microsoft.  Mullor failed to make these required disclosures to Microsoft, but, instead, deliberately misrepresented that his relationship with Ancora had ended, and deliberately concealed his and Ancora's plans to accuse the Microsoft technology.

73.     Mullor intended Microsoft to rely on his misrepresentations and non-disclosures when applying for employment at Microsoft and after he began his employment.  Had he made full disclosure to Microsoft, Microsoft would not have extended its offer of employment, and Mullor would not have been in a position to access Microsoft's confidential materials or disclose those materials to Ancora.

74.     Mullor intended to use his position at Microsoft to obtain Microsoft's confidential materials to facilitate Ancora's patent infringement litigation and was motivated to conceal, and did conceal, his plans from Microsoft.

75.     Mullor's fraud enabled him to secure employment at Microsoft and pursue his plan to surreptitiously access and download Microsoft's confidential, proprietary, and trade secret information relating to its business relationship with its OEMs and its SLP and OEM Activation 2.0 processes, for Ancora's use.  Mullor continued his fraudulent activities by concealing his unauthorized access, use, and disclosure of these materials, by attempting to remove all evidence of his misdeeds from the hard drive of his Microsoft-issued laptop computer, and then lying about these actions while under oath.

76.     Microsoft has been damaged by Mullor's fraudulent conduct.

77.     Microsoft is entitled to injunctive relief set forth above in paragraph 64.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## VIII. COUNT IV: CLAIM FOR UNJUST ENRICHMENT AND DECLARATORY JUDGMENT
### (against Mullor and Ancora)

78.     Microsoft restates, realleges, and incorporates by reference each of the foregoing paragraphs.

79.     In taking the actions giving rise to the causes of action alleged herein, Mullor was at all times acting as the sole shareholder, director and agent of Ancora. Ancora is, therefore, liable to Microsoft for Mullor's actions and non-disclosures.

80.     To the extent that either Ancora or Mullor, as Ancora's sole shareholder, obtains any recovery in the Patent Action, retention of such recovery would be unjust based on the conduct described in the foregoing paragraphs, including without limitation (a) Mullor's wrongful conduct in failing to advise Microsoft, as early as 2005, of his and Ancora's view that Microsoft's development, use, and disclosure to its OEMs of the SLP/OEM Activation technology would infringe upon the '941 Patent and (b) Mullor and Ancora's wrongful conduct in accessing, using, and/or disclosing, without authorization, Microsoft confidential information relating to its SLP/OEM Activation , communications with its OEMs, internal analyses and business plans.

81.     Microsoft is entitled to a declaratory judgment that Mullor and Ancora are required to reimburse and/or indemnify Microsoft for any and all damages or royalties assessed against Microsoft and its OEMs in the context of the Patent Action, without deduction for any fees or costs including, without limitation, any contingency fees to which patent counsel may be entitled.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

## IX. COUNT V: CLAIM FOR VIOLATION OF
## COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### (against Mullor and Ancora)

82.     Microsoft restates, realleges, and incorporates by reference each of the foregoing paragraphs.

83.     Mullor, acting both in his individual capacity and as an agent for Ancora (his wholly-owned company), gained improper access to, obtained confidential information and documents from, erased information and documents relevant to this litigation from, and knowingly altered or otherwise caused damage to Microsoft computers, all without authorization and in violation of the Computer Fraud and Abuse Act ("CFAA"), including 18 U.S.C. § 1030(a)(2), (4), and (5).

84.     Mullor intentionally used his Microsoft-issued laptop computer to gain access to Microsoft's internal servers (both "protected computers" as the term is used in the CFAA) for purposes of obtaining confidential information useful for Ancora's Patent Action.  Such activities were not authorized, fell outside the scope of his legitimate employment responsibilities, and were in direct conflict with, among other things, Mullor's contractual obligations to Microsoft and his common law duty of loyalty.  Mullor engaged in such improper conduct with the intent of benefiting both himself and Ancora.  At various times, including immediately after Microsoft Legal requested access to the hard drive of his Microsoft-issued laptop, Mullor knowingly erased files and otherwise altered data on his laptop for the purpose of concealing his improper access to, downloading of, and disclosure of Microsoft's confidential information.  Mullor intentionally engaged in these activities in furtherance of a scheme to defraud Microsoft and with the actual and intended result of impeding Microsoft's ability to defend against Ancora's patent claims and its ability to prosecute its own affirmative claims against both Mullor and Ancora.

85.     Section (g) of the CFAA (18 U.S.C. § 1030(g)) entitles Microsoft to obtain compensatory damages and injunctive relief or other equitable relief.  As a result of Mullor's and Ancora's violations of the CFAA, Microsoft has been damaged and has suffered losses in

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX (206) 623-8717

1  an amount to be proven at trial, but in any event, far exceeding the minimum statutory amount

2  of $5,000.

3      86.    However, money damages alone will not, and cannot, compensate Microsoft for

4  the harm resulting from Mullor's and Ancora's violations and Microsoft has no adequate

5  remedy at law. The harm to Microsoft is immediate, irreparable, and ongoing. Mullor and

6  Ancora have demonstrated that, unless restrained, they will continue to engage in the conduct

7  alleged herein, to benefit from their prior misconduct, and to conceal such conduct by making

8  false statements in the context of this litigation.

9      87.    Microsoft is entitled to an order enjoining Ancora from making any use of any

10 Microsoft confidential information improperly obtained by Mullor, including for purposes of

11 its prosecution of the Patent Action. Microsoft is further entitled to the injunctive relief

12 outlined above in paragraph 64.

### X.  COUNT VI:  CLAIM FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '941 PATENT
### (against Ancora)

13     88.    Microsoft restates, realleges, and incorporates by reference each of the

14 foregoing paragraphs.

15     89.    Microsoft does not infringe any claim of the '941 Patent, either directly or

16 indirectly (*e.g.*, by inducing or contributing to infringement).

17     90.    None of the OEM Defendants and none of Microsoft's other customers infringe

18 any claim of the '941 Patent, directly or indirectly, by virtue of such customer's use of any

19 Microsoft technology or software.

20     91.    An actual and justiciable controversy exists between Microsoft and Plaintiff as

21 to whether or not Microsoft and its customers (including but not limited to the OEM

22 Defendants) have infringed any claim of the '941 Patent, directly or indirectly, in connection

23 with the use of any iteration of Microsoft's SLP technology.

MICROSOFT'S SECOND AMENDED
COMPLAINT IN INTERVENTION - 21

92.    A judicial declaration that Microsoft and its customers do not infringe any claim of the '941 Patent as stated above in paragraphs 89 and 90 is necessary and appropriate at this time to enable Microsoft and its customers to ascertain their rights and duties with respect to designing, developing, making, licensing, distributing and using Microsoft's technology and software. Absent such a declaration, Plaintiff will continue to assert the '941 Patent against Microsoft and/or Microsoft's customers, and thereby cause Microsoft irreparable injury and damage. Microsoft has no other adequate remedy at law.

93.    This is an exceptional case under 35 U.S.C. § 285, entitling Microsoft to an award of its attorneys' fees incurred in connection with this action.

## XI. COUNT VII:  CLAIM FOR DECLARATORY JUDGMENT OF INVALIDITY OF THE '941 PATENT
### (against Ancora)

94.    Microsoft restates, realleges, and incorporates by reference each of the foregoing paragraphs.

95.    An actual and justiciable controversy exists between Microsoft and Plaintiff as to whether or not any claim of the '941 Patent is invalid and/or unenforceable.

96.    Each claim of the '941 Patent is invalid for failing to meet one or more of the requirements for patentability, including, without limitation, the requirements set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

97.    A judicial declaration that each claim of the '941 Patent is invalid is necessary and appropriate at this time so that Microsoft and its customers can ascertain their rights and duties with respect to designing, developing, making, licensing, distributing and using Microsoft's technology. Absent such a declaration, Plaintiff will continue to assert the '941 patent against Microsoft and/or Microsoft's customers, and thereby cause Microsoft irreparable injury and damage. Microsoft has no other remedy at law.

98.    This is an exceptional case under 35 U.S.C. § 285, entitling Microsoft to an award of its attorneys' fees incurred in connection with this action.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

# XII. PRAYER FOR RELIEF

Wherefore, Plaintiff Microsoft Corporation prays for the following relief:

1. An injunction requiring:

    a. Mullor to have no further role in this lawsuit other than as a Third-Party Defendant, including any role as a witness for Ancora or as a manager of the litigation, as the only practical means of mitigating future damage from Mullor's illicit knowledge of Microsoft's confidential information;

    b. Mullor to take all steps necessary to make immediate and full disclosure to Microsoft of all Microsoft confidential information that is, or previously was, in the possession of Mullor, Ancora or counsel to Ancora as a result of Mullor's misappropriation of such information while a Microsoft employee;

    c. Mullor to take all steps necessary to secure the immediate return of any such confidential information still in the possession of Mullor, Ancora or Ancora's counsel;

    d. Mullor to refrain from providing Ancora or its counsel with any confidential information that he obtained without authorization from Microsoft and not to assist Ancora in its prosecution of its claims of patent infringement against Microsoft or its OEMs; and

    e. Mullor to execute, on behalf of his wholly-owned company, Ancora, a formal license agreement providing Microsoft with "an irrevocable, perpetual, royalty-free, worldwide license to exercise any and all rights with respect to [the '941 Patent], including without limitation the right to sublicense those rights to others," including its OEMs;

MICROSOFT'S SECOND AMENDED
COMPLAINT IN INTERVENTION - 23

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1           f.      Mullor to refrain from directly or indirectly using, in any manner

2                  whatsoever, any Microsoft confidential information that is, or previously

3                  was, in the possession of Mullor; and

4           g.      Ancora to not make any use of any Microsoft trade secret information

5                  improperly disclosed by Mullor, including for purposes of its

6                  prosecution of this lawsuit;

7   2.      A declaration:

8           a.      requiring Mullor and Ancora to reimburse and/or indemnify Microsoft

9                  for any and all damages or royalties assessed against Microsoft and its

10                 OEMs in the context of this lawsuit, without deduction for any fees or

11                 costs including, without limitation, any contingency fees to which

12                 Mullor's or Ancora's counsel may be entitled;

13           b.      that Microsoft and its customers that use Microsoft technology and

14                 software, including the OEM Defendants, do not infringe any claim of

15                 the '941 patent;

16           c.      that each and every claim of the '941 patent is invalid;

17           d.      that each and every claim of the '941 patent is unenforceable; and

18           e.      adjudging this case "exceptional" within the meaning of 35 U.S.C.

19                 § 285;

20   3.      An award of its damages, in a sum to be established at the time of trial;

21   4.      An award of its attorneys' fees and costs; and

22   5.      An award of such further equitable or legal relief as the Court deems proper.

23

24

25

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

DATED this 28th day of May, 2009.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP


By___/s/ Arthur W. Harrigan, Jr._____
     Arthur W. Harrigan, Jr., WSBA #1751
     Christopher T. Wion, WSBA #33207

PERKINS COIE BROWN & BAIN P.A.

     Chad S. Campbell (*Admitted pro hac vice*)
     cscampbell@perkinscoie.com
     Scott S. Minder (*Admitted pro hac vice*)
     sminder@perkinscoie.com
     2901 North Central Avenue, Suite 2000
     Phoenix, AZ 85012-2788
     Telephone: 602-351-8000

     Lauren Sliger (*Admitted pro hac vice*)
     lsliger@perkinscoie.com
     1620 – 26th Street, Suite 600 South Tower
     Santa Monica, CA 90404
     Telephone: 310-788-9900

     Stacy Quan, WSBA #21119
     T. Andrew Culbert, WSBA #35925
     Microsoft Corporation
     One Microsoft Way
     Redmond, WA 98052-6399
     Stacy.Quan@microsoft.com
     Andycu@microsoft.com
     Telephone: (425) 882-8080

     *Attorneys for Intervenor and Third Party Plaintiff*
     *Microsoft Corporation*

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1.    I am over the age of 21 and not a party to this action.

2.    On May 29, 2009, I caused the preceding document to be served on counsel of record by ECF delivery through the CM/ECF System.

SUSMAN GODFREY LLP
Drew D. Hansen
Floyd G. Short
Dan Walker
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: 206.516.3880
Facsimile: 206.516.3883
*Attorneys for Plaintiff Ancora Technologies,*
*Inc. and Third Party Defendant Miki Mullor*

BROOKS KUSHMAN P.C.
Mark A. Cantor (*admitted Pro Hac Vice*)
John S. LeRoy (*admitted Pro Hac Vice*)
Marc Lorelli (*admitted Pro Hac Vice*)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
*Attorneys for Plaintiff Ancora Technologies,*
*Inc. and Third Party Defendant Miki Mullor*

_____/s/ Linda Bledsoe_____
LINDA BLEDSOE

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# EXHIBIT A

If you wish to attach a list of inventions, per paragraph 6, below, please contact your recruiter.

## Microsoft Corporation Employee Agreement ("Agreement")

As a condition of my employment with MICROSOFT CORPORATION ("MICROSOFT"), a Washington corporation, and in consideration of the compensation now and hereafter paid to me, I agree as follows:

1. **Best Efforts/Moonlighting/Conflicting Interest.** I will diligently perform my assigned duties and devote my entire working time, abilities and efforts to such duties and to furthering the best interests of MICROSOFT. I understand that my duties include complying with MICROSOFT's policies as published in the MICROSOFT Employee Handbook and as amended from time to time in MICROSOFT's sole discretion, including without limitation MICROSOFT's policies regarding disclosure of and approval of work outside MICROSOFT ("moonlighting" activities). During my employment, I will not engage in any activity or investment that (a) conflicts with MICROSOFT's business interests, (b) occupies my attention so as to interfere with the proper and efficient performance of my duties for MICROSOFT, or (c) interferes with the independent exercise of my judgment in MICROSOFT's best interests. An investment of less than 1% of the shares of a company traded on a registered stock exchange is not a violation of this paragraph, so long as my investment activity is consistent with MICROSOFT's policies.

2. **Employment Terminable At Will, With or Without Cause.** I acknowledge and agree that my employment with MICROSOFT is not for any specific or minimum term, that its continuation is subject to MICROSOFT's and my mutual consent, and that it is terminable at will, meaning that either MICROSOFT or I will be free to terminate my employment at any time, for any reason or no reason, with or without cause, and with or without notice, pre-termination warning or discipline, or other pre- or post-termination procedures of any kind. I acknowledge and agree that any prior representations to the contrary are void and superseded by this Agreement. I am not entitled to rely and I shall not rely on any future representations to the contrary, whether written or verbal, express or implied by any statement, conduct, policy, handbook, guideline or practice of MICROSOFT or its employees or agents. Any such future contrary representations will not modify this Agreement or my at-will status. Notwithstanding the foregoing and paragraph 15 below, my at-will status may be modified only by a formal written "Employment Contract" signed by me and by an officer of MICROSOFT and containing language expressly stating MICROSOFT's agreement to modify the terms of this Agreement and my at-will status.

3. **Non-Disclosure.** During my employment and at all times thereafter, I will neither disclose to anyone outside MICROSOFT nor use for any purpose other than my work for MICROSOFT (a) any confidential or proprietary information or trade secrets of MICROSOFT or its subsidiaries or (b) any information received by MICROSOFT or its subsidiaries from others that the recipient is obligated to treat as confidential or proprietary. In addition, I will not disclose confidential or proprietary information or trade secrets to other MICROSOFT employees except on a "need-to-know" basis. For purposes of this paragraph and paragraphs 9 and 10, "confidential or proprietary information or trade secrets" means all data and information in whatever form, tangible or intangible, that is not generally known to the public and that relates to the business, technology, practices, products, marketing, sales, services, finances, or legal affairs of MICROSOFT or its subsidiaries or any third party doing business with or providing information to MICROSOFT or its subsidiaries, including without limitation information about actual or prospective customers, suppliers and business partners; non-public information about employees, such as contact information, job duties or descriptions, compensation and performance; business, sales, marketing, technical, financial and legal plans, proposals and projections; and concepts, techniques, processes, methods, systems, designs, programs, code, formulas, research, technologies, features of technologies, experimental work and work in progress. If I have any questions as to what comprises such confidential or proprietary information or trade secrets, or to whom it may be disclosed, I will consult my manager. I agree that MICROSOFT's subsidiaries are intended third-party beneficiaries of this paragraph and paragraph 10. I also agree to cooperate with MICROSOFT in its efforts to ascertain and assure my compliance with this paragraph and paragraph 10, even after my employment with MICROSOFT ends.

4. **Copyrights.** I acknowledge and agree that any and all copyrightable works prepared by me within the scope of my employment by MICROSOFT will be works made for hire, that MICROSOFT will own all rights under copyright in and to such works, and that MICROSOFT will be considered the author of all such works. If and to the extent that any jurisdiction should fail to deem any copyrightable work prepared by me within the scope of my employment by MICROSOFT to be a work made for hire owned by MICROSOFT, I hereby irrevocably assign to MICROSOFT all rights, title and interest in and to such work.

5. **New Inventions.** I will promptly and fully disclose to MICROSOFT any and all inventions, discoveries, designs, developments, improvements and trade secrets, whether or not patentable (collectively "Inventions") that I solely or jointly may conceive, develop, reduce to practice or otherwise produce during my employment with MICROSOFT. Subject to the NOTICE below, I agree to grant and I hereby grant, transfer and assign to MICROSOFT all my rights, title and interest in and to such Inventions. I waive and quitclaim to MICROSOFT any and all claims of any nature whatsoever that I

now or hereafter may have for infringement of any patent application, patent, or other intellectual property right relating to any Inventions so assigned to MICROSOFT.

**NOTICE:** My obligation to assign shall not apply to any Invention that:

a)      was developed entirely on my own time without using any equipment, supplies, facilities, or trade secret information of MICROSOFT;

b)      does not relate (i) directly to the business of MICROSOFT or (ii) to the actual or demonstrably anticipated research or development of MICROSOFT; and

c)      does not result from any work performed by me for MICROSOFT.

I will assign and do hereby assign to MICROSOFT or its designee all my rights, title and interest in and to any and all Inventions full title to which may be required to lie in the United States government by law or by any contract between MICROSOFT and the United States government or any of its agencies. In addition to the rights provided to MICROSOFT under paragraph 6 below, as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development.

6. **Excluded and Licensed Inventions.** I have attached a list describing all Inventions that I am currently developing and all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions. As to any Invention in which I have an interest at any time prior to or during my employment, if I use or incorporate such an Invention in any released or unreleased MICROSOFT product, service, program, process, machine, development or work in progress, or if I permit MICROSOFT to use or incorporate such an Invention, MICROSOFT is hereby granted and shall have an irrevocable, perpetual, royalty-free, worldwide license to exercise any and all rights with respect to such Invention, including without limitation the right to protect, make, have made, use and sell that Invention without restriction and the right to sublicense those rights to others. This license shall be exclusive, subject to any preexisting non-exclusive licenses or other pre-existing rights not subject to my control.

7. **Documentation of Intellectual Property Rights.** I agree to execute, acknowledge, verify and deliver to MICROSOFT, or cause the same to be accomplished, any and all further documents (including without limitation patent applications, certificates of authorship, and other instruments appropriate for the protection and enforcement of intellectual property rights throughout the world) that MICROSOFT may reasonably deem necessary or appropriate to carry out, evidence or effectuate the purposes or intent of this Agreement. My obligations under this paragraph 7 will apply both during and indefinitely after the term of employment. If for any reason whatsoever I fail to execute, acknowledge, verify or deliver any such document reasonably requested by MICROSOFT, I hereby irrevocably appoint MICROSOFT and its duly authorized officers and agents as my agent and attorney in fact, to act in my stead to execute, acknowledge, verify and deliver any such document (as applicable) with the same legal force and effect as if done by me. In furtherance of this Agreement, I will testify at MICROSOFT's request and expense in any legal proceeding arising during or after my employment.

8. **Prior Employers and Obligations.** I represent and warrant that my employment with MICROSOFT will not violate any contractual or other obligations I have. I will neither use during my employment with MICROSOFT nor disclose to MICROSOFT any trade secrets or information that I am required to keep confidential relating to my former employers, principals, partners, co-venturers, clients, customers or suppliers, and I will not bring onto MICROSOFT's premises any unpublished document or any property belonging to any such persons or entities without their consent. I will honor all non-disclosure, proprietary rights, or other contractual agreements I may have with any person or entity, and I have disclosed to MICROSOFT all such agreements that may bear on my employment with MICROSOFT.

9. **Ownership and Return of Materials.** I acknowledge and agree that I will have no ownership or privacy interest in materials, data or information stored on or transmitted using MICROSOFT-owned or MICROSOFT-leased property or equipment, all of which shall be subject to access by MICROSOFT at any time without notice. When my employment by MICROSOFT ends, I will immediately return to MICROSOFT all papers, drawings, notes, manuals, specifications, designs, devices, code, email, documents, diskettes, CDs and tapes created during or related to my employment with MICROSOFT, as well as any other material in any form or media containing any confidential or proprietary information or trade secrets. I will also return all keys, access cards, credit cards, identification cards and other property and equipment belonging to MICROSOFT.

10. **Non-Competition and Non-Solicitation.** While employed at MICROSOFT and for a period of one year thereafter, I will not (a) engage in any competitive activities or accept employment by or agree to provide services to any person or entity that engages in competitive activities ("competitive activities" meaning the development, production or provision of any product, service, technology, product feature or project that is or is intended to be competitive with one or more products, services, technologies, product features or projects, including actual or demonstrably anticipated research or development, on which I worked or about which I learned confidential or proprietary information or trade secrets while employed at MICROSOFT or a MICROSOFT subsidiary) or (b) encourage, induce, attempt to induce, or assist another to induce or attempt to induce any person employed by

MICROSOFT or by one of MICROSOFT's subsidiaries to terminate his or her employment with MICROSOFT or its subsidiary or to work for any entity other than MICROSOFT or its subsidiary. Further, for a period of one year after the termination of my employment with MICROSOFT, I agree that I will not render services to any client or customer of MICROSOFT for which I performed services during the twelve months prior to leaving MICROSOFT's employ. If during or after my employment with MICROSOFT I seek work elsewhere, whether as an employee, consultant or in any other capacity, I will provide a copy of this Agreement to all persons and entities by whom I am seeking to be hired or with whom I am seeking to do business before accepting any employment or engagement by them. I agree that the restrictions in this paragraph are reasonable in light of, among other things, the global and highly competitive markets in which MICROSOFT and its subsidiaries operate.

11. **Reimbursement.** I hereby authorize MICROSOFT, at any time during my employment or following my termination, to withhold from any monies it otherwise owes me (including without limitation salary, bonus, commissions, expense reimbursements, and ESPP refunds) any and all monies due from me to MICROSOFT (including without limitation cash and travel advances, amounts I owe the Company Store, overpayments made to me by MICROSOFT, amounts received by me due to MICROSOFT's error, unpaid credit or phone card charges, and any debt I owe MICROSOFT for any reason, including without limitation misuse or misappropriation of company assets). Further, I agree that MICROSOFT may condition the exercise of any stock options I may receive by requiring me to (a) sell a sufficient number of shares to generate cash to repay any such amounts I owe to MICROSOFT and (b) remit such cash to MICROSOFT. At the termination of my employment with MICROSOFT or at any other time upon reasonable notice, I agree to execute whatever documentation may be necessary to authorize MICROSOFT to make the withholdings described in this paragraph.

12. **Personal Property.** I agree that MICROSOFT is not responsible for loss of or damage to my personal property on MICROSOFT premises or, if applicable, on residential premises subsidized by MICROSOFT (including without limitation apartments or temporary housing). I will hold MICROSOFT harmless from any and all claims relating to such personal property.

13. **Equitable Relief.** I acknowledge that any violation of paragraphs 1, 3, 4, 5, 6, 7, 9, or 10 of this Agreement by me will cause irreparable injury to MICROSOFT and shall entitle MICROSOFT to equitable relief by a court, including without limitation temporary restraining orders and preliminary and permanent injunctions, which may extend any previously agreed period of restraint.

14. **Non-Waiver and Attorneys' Fees.** Waiver by either me or MICROSOFT of strict performance of any provision of this Agreement, whether on one or more than one occasion, shall neither constitute a waiver of, nor prejudice either party's right to require, strict performance of the same or any other provision in the future. If court proceedings are brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to an award of reasonable and necessary expenses of litigation, including without limitation reasonable attorneys' fees.

15. **General.** I agree that this Agreement shall be governed for all purposes by the laws of the State of Washington as such laws apply to contracts performed within Washington by its residents and that exclusive venue and exclusive personal jurisdiction for any action arising out of this Agreement shall lie in state or federal court located in King County, Washington. If any provision of this Agreement is deemed to be excessively broad, that provision shall be narrowed to the extent necessary to make it enforceable and then enforced to the maximum extent permissible by law. If any provision of this Agreement is determined to be void and cannot be saved by a narrowing construction, that provision shall be severed from this Agreement and the other provisions shall remain in full force and effect. This Agreement sets forth the entire agreement of MICROSOFT and myself as to the subjects discussed herein, and it may not be modified except by a subsequent written agreement signed by me and by an officer of MICROSOFT. Paragraph headings appear as an aid to the reader and shall not be construed to limit any provision of this Agreement. The terms and conditions of this Agreement shall survive termination of my employment. I understand that this Agreement is important, and I have had adequate time to read it before signing.

**I HAVE READ AND FULLY UNDERSTOOD THIS AGREEMENT. BY SIGNING BELOW, I AGREE TO BE BOUND BY ALL OF ITS TERMS.**

Your electronic signature is: Miki Mullor
You submitted this document on Thu, 24 Nov 2005 10:17:02 GMT.

# EXHIBIT B

## Tosi, Liza

| | |
|---|---|
| **From:** | Miki Mullor [MikiMullor@beeble.com] |
| **Sent:** | Saturday, September 04, 2004 12:40 PM |
| **To:** | McNally, Edward |
| **Cc:** | 'Philip Lo'; Neilkirk, Katherine J. |
| **Subject:** | RE: Beeble Emergency |

Ed

A two weeks continuance, how short it seems, may jeopardize Beeble's future in a way that couldn't be repaired, for the following:

1. The company has been operating for 3 years without financing: no revenues ha been generated and no funding has been secured.

2. The total capital assets Beeble had in the last 12 months been $25 and change. Employees have been working for 2 years without income and paying business expenses out of pocket, over 95% of those out of my pocket.

3. IP litigation: Beeble has put Microsoft on notice for patent infringement in Dec 2002. We have secured an arrangement to enforce the patent via contingency litigation, but our IP case it at great risk because of the long delay between the notice and the future action. Potential damages are estimated at $250-300M, and losing IP rights because of delays will be a death blow for the company. Obviously, we cannot move forward until this case is over

4. Business Opportunity: in April 2004 we have successfully secured a first potential client, Electronic Arts, that represents $5 M potential annual revenues for the company. EA is currently waiting for a product. The long delay in delivering a product to EA is destroying our credibility with them and creates a huge risk on this business opportunity. We cannot develop a product unless we first secure some kind of financing.

5. CONFIDENTIAL - Investment: we are probably 2 weeks away from closing a $1M investment for product development. The investors are not aware of this litigation and we cannot and will not proceed with them unless we are declared in control of Beeble by the court. While we could potentially delay the closing an extra week (which will put us at about the time the court will render a decision), adding more delays will force us to explain the situation and we will probably lose the deal.

6. Tax Returns: during Cecile's depositions we have discovered that the federal tax return for Beeble was not filed this year and there is an extension in place until 9/15 which cannot be extended. Cecile has all tax documentation including last year's return (that I paid for) but will not release it until the case is resolved. She will not file the returns even though she has received Beeble shares as compensation. Bryant is aware of the situation (per Cecile's deposition ) but instructed her three times not to file this year. If we cannot file the return it may jeopardize Beeble as I will not be able to afford any fines that will be assessed on the company. This is a serious threat to the company deliberately created by Bryant who now holds the company hostage with it. We must file those returns!

7. Personal Finance: if we lose the deal, what ever is left of Beeble will go away as the people involved have been working without income for 2 years. Some of the people actually risk significant financial ramifications if there would be anymore delays.

# REDACTED

REDACTED

Thanks

Miki

---
Miki Mullor
President and CEO
Beeble, Inc.

# EXHIBIT C

## Application for Employment

It is the policy of Microsoft to provide equal employment opportunities to all qualified persons without regard to race, creed, religion, sex, age, national origin, physical or mental disability, marital status, veteran status, sexual orientation, or any other status or characteristic protected under federal, state, or local law. Reasonable accommodations in the application process are available for individuals with disabilities. If you have a disability and would like to request an accommodation, please contact your Recruiter. Microsoft is an equal opportunity employer and supports workforce diversity.

Please read carefully and complete by providing all information requested.
APPLICATION FOR EMPLOYMENT DOES NOT REPLACE A RESUME.

**Applicant Name:** Miki Mullor

| | |
|---|---|
| Street Address | 35 Marsala |
| City | Irvine |
| State/Province | CA |
| Postal Code | 92606 |
| Country | United States |
| Home Telephone | 949 552 6722 |
| Work Telephone | 949 929 6454 |
| Email Address | MikiMullor@ancoratech.com |
| List Position(s) Applied For | Lead Program Manager |
| How were you referred to Microsoft? | Internet/Web, etc. |
| If referred by an employee, enter who. If Other, list source. | |

### Miscellaneous

| | |
|---|---|
| Have you ever worked at Microsoft or any of its affiliates in any capacity, e.g., FT/PT employee, independent contractor, vendor, agency temporary? If Yes, in what capacity, departments and dates? | No |
| Is there a possibility that you are related to a Microsoft employee who will have managerial authority over a position for which you are applying? If Yes, please list: (Name/Relationship) | No |
| In the past 7 years, have you (1) been convicted of or pled guilty to a felony or (2) been released from prison after having served a sentence for a felony? A past conviction will not necessarily disqualify you from employment. (Note: You are not obligated to disclose sealed or expunged records of any conviction or arrest.) If Yes, please list: | No |
| Are you subject to any non-competition, non-disclosure or other agreement that would preclude or restrict your employment at Microsoft? | No |
| If you are applying for a particular position (or positions) for which you have reviewed a job description, can you perform the essential job functions of the position(s) with or without accommodation? | Yes |
| Are you over 18? | Yes |
| Are you currently authorized to work for all employers in the United States on a full-time basis, or only for your current employer? | All employers |

### Work History

| | |
|---|---|
| Have you ever been involuntarily terminated by a prior employer? | No |
| (Entries are sorted in reverse chronological order) | |
| Company Name | Ancora Technologies Inc. |
| Type of Business | Software Development |
| Title or Job Classification | CTO, Founder |
| Street Address | 35 Marsala |
| City | Irvine |

| | |
|---|---|
| State/Province | CA |
| Postal Code | 92606 |
| Country | United States |
| Phone | |
| Supervisor's Name and Title | n/a |
| Phone (if different than above) | |
| Compensation | n/a |
| Start Date | January 2003 |
| End Date | October 2005 |
| Reason for Leaving | Company went out of business |

| | |
|---|---|
| Company Name | Blue Pumpkin Software Inc. (now Witness Systems.) |
| Type of Business | Software Development |
| Title or Job Classification | Director, software developement |
| Street Address | 3979 Freedom Circle, Suite 500 |
| City | Santa Clara |
| State/Province | CA |
| Postal Code | 95054 |
| Country | United States |
| Phone | 408 830 5400 |
| Supervisor's Name and Title | Bill Davidheiser, VP Engineering |
| Phone (if different than above) | Not there anymore |
| Compensation | |
| Start Date | February 2002 |
| End Date | November 2002 |
| Reason for Leaving | Left to start own company |

| | |
|---|---|
| Company Name | Stratacare Inc. |
| Type of Business | Software Development |
| Title or Job Classification | System Architect |
| Street Address | 16800 Aston, 2nd Floor |
| City | Irvine |
| State/Province | CA |
| Postal Code | 92606 |
| Country | United States |
| Phone | 800-277-6512 |
| Supervisor's Name and Title | Ron Taylor, CIO |
| Phone (if different than above) | n/a |
| Compensation | |
| Start Date | January 2001 |
| End Date | November 2001 |
| Reason for Leaving | Left to work for my old boss at Blue Pumpkin |

| | |
|---|---|
| Company Name | Hiho Technologies Inc. |
| Type of Business | Software Development |
| Title or Job Classification | Director, Software Development |
| Street Address | n/a |
| City | |

State/Province
Postal Code
Country
Phone
Supervisor's Name and Title          **Bill Davidheiser, VP Engineering**
Phone (if different than above)       **949 42 8582**
Compensation
Start Date                            **February 1999**
End Date                              **December 2000**
Reason for Leaving                    **Company closed its doors**

Company Name                         **Self Employed**
Type of Business                     **Consulting, Software Dev.**
Title or Job Classification          **Software Engineer**
Street Address
City
State/Province
Postal Code
Country                              **Israel**
Phone
Supervisor's Name and Title          **self**
Phone (if different than above)
Compensation                         **n/a**
Start Date                           **February 1996**
End Date                             **November 1998**
Reason for Leaving                   **Immigrated to the U.S.**

Company Name                         **Israeli Military**
Type of Business                     **Army Service**
Title or Job Classification          **Intelligence Officer**
Street Address
City
State/Province
Postal Code
Country                              **Israel**
Phone
Supervisor's Name and Title          **n/a**
Phone (if different than above)
Compensation                         **n/a**
Start Date                           **July 1991**
End Date                             **May 1995**
Reason for Leaving                   **Honorable discharge**

**Professional / Work References**
Name/Title                           **Bill Davidheiser, VP Engineering**
Company                              **Hiho Technologies, Blue Pumpkin Software**
Relationship                         **Manager**
City, State/Province, Country

| Phone | 949 433 8582 |
| Name/Title | Ken Forbes, CTO |
| Company | Hiho Technologies |
| Relationship | Manager |
| City, State/Province, Country | |
| Phone | 949 212 5112 |
| Name/Title | Mark Andre, Sr. Engineer |
| Company | Stratacare |
| Relationship | Direct report |
| City, State/Province, Country | 16800 Aston, 2nd Floor , Irvine CA 92606 |
| Phone | 949 743 1217 |
| Wage or Salary Required | 110,000 – 130,000 |
| Date Available | December 2005 |

If any of your educational, employment or other records are under a name other than one you provided above, or if references know you by another name, please provide these names.

## Education History

(Entries are sorted in chronological order)

| High School | Hadassim High School |
| Location (City, State/Province, Country) | Hadassim, Israel |
| Date From | September 1987 |
| Date To | July 1991 |
| Graduated | Yes |

| College | Interdisciplinary Center, Israel |
| Degree | Bachelor of Law |
| Major Course or Subject | Law |
| Location (City, State/Province, Country) | Hertzliya, Israel |
| Date From | October 1994 |
| Date To | March 1998 |
| Graduated | Yes |

| College | |
| Degree | |
| Major Course or Subject | |
| Location (City, State/Province, Country) | |
| Date From | |
| Date To | March 1998 |
| Graduated | |

Foreign languages – If related to the position(s) from which you are applying, please indicate any foreign language you can speak, read and/or write.

List other education training, or relevant certifications.

## U.S. Military Record

| Branch of Service | |
| From | |
| To | |
| Present Military Affiliation | |

Kinds of Training and Duty While in Service

I authorized the investigation of all information and statements contained in this application. Accordingly, I authorize Microsoft Corporation, its affiliate companies, and persons acting on their behalf to conduct background and reference checks, which may include: criminal conviction checks; investigation and verification concerning my employment and work performance (current and former), education, and military service, interviews of past and current employers, managers, and co-workers; and other background information, including character information, that Microsoft and affiliate companies in their sole discretion deem appropriate. I agree to complete any additional forms that are necessary to complete this investigation. I authorize all former employers and the references and educational institutions listed above to provide to Microsoft and its affiliate companies any and all information that may be useful in making a hiring decision. I release Microsoft, its affiliate companies, their employees, officers, directors, and representatives from any and all claims, liability, or damages that may result from furnishing, communicating, or using information authorized by this form or obtained in their investigations.

I certify that the facts and information set forth in this application are true and complete to the best of my knowledge. I understand that any falsification, misrepresentation, or omission of facts on this application (or any other document) may disqualify me from employment, or if I have commenced employment, may result in my dismissal at a later date. I understand that this will be the case regardless of when or how the falsification, misrepresentation, or omission of facts was discovered.

I understand that nothing contained in this employment application or in the granting of an interview creates an offer of employment or an employment contract between Microsoft and me. I understand and agree that if I am hired by Microsoft, my employment shall not be for any minimum or specific period and shall be terminable at-will, meaning that I may resign at any time and Microsoft may terminate my employment at any time, for any or for no reason, with or without cause or any pre-termination procedures or warnings. I acknowledge that any prior contrary representations are void and that any future contrary representation is invalid unless contained in a formal written employment contract expressly stating Microsoft's intent to modify my at-will status and signed by an officer of Microsoft.

I represent and warrant that my employment with Microsoft and performance of job duties for Microsoft will not violate the rights, including contractual rights, of any third party.

I HAVE READ, REVIEWED, and UNDERSTAND the contents of this application AND AGREE TO THE TERMS SET FORTH IN THIS APPLICATION AND THE ABOVE STATEMENTS.

Your electronic signature is: Miki Mullor
You submitted this document on Tue, 25 Oct 2005 03:01:57 GMT.

(This employment application cannot be processed without your signature.)

Document # : 0204-000-000-150

| Start Date | Job Title | Group / Division Name | Manager Name |
|---|---|---|---|
| | Lead Program Manager | 60438 US-US-IAP | David Cross |

# EXHIBIT D

Miki Mullor Inventions

Prior inventions-

US Patent 6,411,941
US Patent application 20030120938

Prior products:

Internet Strong Authentication using the PC BIOS as a key storage container

Your electronic signature is: Miki Mullor
You submitted this document on Tue, 31 Jan 2006 02:25:51 GMT.